We move to the fourth case this morning, Matlin v. Spin Master. Mr. Loftus. Good morning. May it please the court. Alex Loftus for the plaintiffs. So all the claims here arise from a forgery. And as a result of this forgery, in order to be able to freely transfer all the valuable interest in intellectual property, defendants had to engage in this forgery and then relied on the forgery multiple times in order to receive the benefit of the invention. Every claim pled here relies on and can't be completed without a sale. So the sale in Illinois is a necessary element of the claim. We pled three claims. First, unjust enrichment. So defendants unjustly received the benefit of owning the rights in the property that they obtained via the forgery. And they received that benefit when a sale is completed. So when a sale is completed in Illinois, they receive more money. There's the unjust enrichment. Mr. Loftus, if I could stop you on the theme of the day, appellate jurisdiction. Yes. Did anybody look for precedent related to pending Rule 11 motions? We did. We didn't find anything. So arguably, so the pending Rule 11 motion... You didn't find the Cleveland case from our court? No. My understanding was that an issue that goes to the ability to administer justice. Moving on. So then the breach of contract claim, same issue. The elements of the claim cannot be satisfied without a sale. A sale occurs in Illinois. So there's an agreement to pay a royalty when a sale is made and money is received. When a sale in Illinois is completed and money is received for that sale in Illinois, then the breach occurs. Same thing for fraud. There is no fraud claim without a sale actually occurring. When a product is sold in Illinois based on the forged documents, the royalty is received and not paid. Again, requiring the sale. Mr. Loftus, is it correct that under your theory, I understand you to be relying on appeal for minimum contacts here, only on the interactive website, correct? Well, so you have the actual sale that's occurred. So the interactive website is... The sale to you? The sale to me. And under that theory, would it be correct that the defendants would be subject to personal jurisdiction anywhere in the United States? That's the issue. So it's a combination of advertising, the sale occurring here, the two points. So if they advertise in every state of the United States, this is PAW Patrol. So if PAW Patrol is advertising in every state and making sales in every state, then they could, they purposely have been... But you're saying that in essence, that a royalty dispute could be litigated anywhere in the United States. If they advertise everywhere and if that occurs everywhere, yes. Okay. There isn't a risk of a slippery slope here because you think about where this would actually come up. So you've got commission disputes, you could maybe have some kind of non-compete issues. There's very few claims where an element of the claim actually occurs in each state. So there isn't a real risk of a slippery slope here. Because in this case, my purchase in Evanston completed the tort and that completed the breach for each of the claims. There's just no real risk of a slippery slope. It's about the only instances I can think of would be commissions, which under the commission statutes, and especially in Illinois, you can bring those in the location of the plaintiff regardless. And then maybe in some kind of non-compete context. So it's a very rare instance where you have the tort or the breach being committed in every state where the product is sold. Moving on here, the key distinguishing point between this and HEMI, and where this is better than HEMI, is HEMI pointed out that the interactive website by itself was sufficient because they excluded New York. And there's a line in the case that said it'd be even better if they actually listed Illinois. In this case, defendants list on their website the states they'll ship to. So by having that drop-down menu that lists the states they'll ship to, that purposely avails them of the jurisdiction of Illinois. Conversely, if they just had a website that didn't list the states, then there wouldn't be the same exposure. Was there any contact between the plaintiffs and these defendants before suit was filed? And these defendants, with swimways, yes, there was some contact between them. What was that? They had arbitration proceedings regarding this. And how did those turn out? It was a mixed bag. There were four separate arbitrations, and issues went both ways in those. And then going back to precedent, so this is better than HEMI, and then if you compare this to advanced, so in advanced, none of the claims there required an element, the real issue in advanced was that the claims didn't tie to the jurisdiction. Here, the claims require the jurisdiction. These, you know, none of the torts could be completed without a sale being completed. Unlike in HEMI, they had interference claims, but they didn't tie to the jurisdiction. They had infringement claims, which all the elements of the claim could be satisfied without the actual sale. And then also in HEMI, they had a website, but the website didn't specifically list Illinois. And then finally in HEMI, they added an actual hearing on the issue, and there was no evidence presented of a sale occurring in Indiana. Whereas here, there was no hearing, and so if you take all facts as true in the affidavits, there's an affidavit of a sale here, there's an affidavit of advertising here, there's a point in the affidavit regarding defendant's participation in a convention here where they're promoting their toys. So it fits every element of purposeful availment. The only issue is that the court's fear of creating some kind of universal jurisdiction. So you simply write the opinion to focus on the advertising and the convention here. So the fact that defendants, you know, had a period of convention here, a toy convention, promoting their product, that is a distinguishing factor. But the litigation isn't about that. Correct, it's about the products that are promoted there. No, no, it's about a breach of contract, a breach of the asset purchase agreement. Right, and none of those. And about an alleged fraud on the patent office. Correct. Neither of which occurred here, or has any meaningful connection to the state of Illinois. All the breaches occurred here. Without a sale here. No, no, that's not the breach. Well, there is no breach if they didn't make any money. If they didn't complete a sale, there is no breach. Where is- If they just engaged in fraudulent conduct and didn't make any money off it, there's no breach. So if the plaintiffs had hired a law firm in California to litigate this claim, I assume the website is seen in California. If they are- Okay, so let's say they're Illinois residents, but they want to litigate this case in California, and they hire a law firm in California, and the lawyer makes a purchase. That's enough to manufacture personal jurisdiction in California. It's not manufacturing personal jurisdiction. When a company purposely avails themselves laws of the state. That's purposely manufacturing jurisdiction. If there had been no other sale- Counsel? It's all your- No, go ahead. Sorry. It's usually a good idea when one of the judges is asking a question to listen to that question. You're here because there's one sale, right? That's what's in the record is one sale. Well, is it things outside the record, then, that we don't know about of other sales? Well, yeah. I mean, this is- The Springflow product is sold all over. I mean, there's many people in Illinois buying these products. If we had a full evidentiary hearing on the issue, then we could have presented evidence of 1,000 sales. So the issue is that if a defendant is selling a product in a jurisdiction, whether they can be liable in that jurisdiction- You ever hear of a thing called sharp practice? Yes. Does this sound like it to you? Absolutely not, Your Honor. So when you have the plaintiff's doing the work here, you have the advertising here, you have the sale here. This reminds me of, I lost a- And the whole patent prosecution business in Chicago is built on ordering a product and then suing based on when it arrives. So it's the Monster Energy case I cite below. And then I lost a case following that. And I made the sharp practice argument against the defendant, and Judge Blakely laughed at me. This is- The product is sold here. And it's no different. It creates a dangerous slippery slope. Because what happened if I purchased the product, which is a spring float, my three-year-old son Mac is playing with it while watching Paw Patrol and gets injured. And then can they not be held into court here? Because he could have been injured in another state. That's a tort claim. This is a breach of contract claim. That's a personal injury tort where there is a meaningful connection, or at least a potential meaningful connection, with the form's state. Because the defendant purposely availed itself of doing business in the state and directed its commercial activities towards consumers in the state. That's not what the claim- The gravamen of the claim here is a breach of contract, not between the consumer and the manufacturer, but between the holder of the IP, or alleged holder of the IP royalty rights, and a subsequent purchaser of those IP rights. That's a very different situation. Your analogy just doesn't work here. If you take it apart, the elements of the claims, let's say a tort claim. So my son Mac injures his leg playing with the thing. So the tortious act is the failure to design the product carefully, which occurs in Taiwan or Canada or wherever. That's the tortious act. And then the damage is completed in Illinois after the purchase is made. It's the exact same thing with a breach of contract or a fraud claim or an unjust enrichment claim where the actual tortious act, the decision to not pay the money occurs somewhere else. And then when it happens, when the money is received, that happens in Illinois. So- Or when the money is not received, right? Which goes to Illinois. So if you want to just go to where the damages are- Where is the locus of a failure to pay? I realize this has a Zen-like quality to it, but there's some case law out there. I'm just wondering what you think about it. I've been trying to avoid the argument of, well, just go where the damages are. So plaintiffs live here. They've received the money here. The money be paid here. We know that's not enough. Exactly. So that's why I'm not arguing about that. Okay. That's the logic and reason why we're in Illinois. The other issue is because the defendants aren't necessarily parties to the contract. So plaintiffs perform the work on the contract here in Illinois. That's the other more logical basis. Again, it doesn't really apply here legally. Is, just so that I understand it, is it your position that Spinmaster is somehow an indirect assignee of gray matter in this? Yes. Okay, thank you. Okay. I'll save my time. Thank you. Good morning, and may it please the court. I'd like to correct one response that the counsel provided to the court when asked whether there were pre-suit communications or interactions between the plaintiffs and these defendants. And he said yes by virtue of arbitration proceedings between those parties. But in fact, the arbitrations were between the plaintiffs and their prior employer, 180s Inc., which is not a party to this case. The defendants in this case were not parties to those arbitrations. Could I ask you, Mr. Graves, also about appellate jurisdiction here? Ordinarily, a Rule 11 motion would not pose a problem. But your Rule 11 motion seeks to modify the judgment to get a dismissal with prejudice, correct? We do seek a dismissal with prejudice by virtue of that. So why would it be unreasonable, then, to treat your Rule 11 motion pending still in the district court as a Rule 59e motion that seeks to modify the judgment and would defeat appellate jurisdiction here? Our understanding of the law, and this includes the Ray Hollick gravel case that was cited by the appellants in their jurisdictional statement, is that the pendency of a Rule 11 sanctions motion does not defeat appellate jurisdiction. Nobody found the actual relevant cases on Rule 11 motions. The logic of Ray Hollick gravel does extend there. There's no question about that. But that's ordinarily the case. But I have never seen a Rule 11 motion that, after you've convinced the district judge she should not decide the merits of this case, that now you want her to decide the merits of the case under the guise of a Rule 11 motion. And it could be deemed in substance a Rule 59e motion to modify the judgment defeating appellate jurisdiction. I understand, Your Honor. Any help? I would say, in response, that the complaint was dismissed for lack of personal jurisdiction. But we also were asserting to the court that the claims initially, as pled, were frivolous, not well-grounded in law or fact. And we'd like to obtain... You think you can win on both grounds in the same court? We think we could certainly get attorney's fees and costs from the same court, Your Honor. And we are seeking that relief. So you do want her to decide the merits? We certainly want her to provide attorney's fees and costs incurred, Your Honor. The plaintiffs had indicated that they may file in another venue. That's usually the result when you win a motion on jurisdiction and venue. That's right. I thought we'd be in Virginia now, in my home state. Litigating the case on the merits. But the plaintiffs brought their personal jurisdiction appeal here instead. Now, if I may move on, Your Honor, to the merits. Counsel also said that the breaches here occur in this form. In the Northern District, all of the breaches occur here, he said. I don't understand the basis for that statement. Because, in fact, the plaintiffs are seeking royalties on every sale by swimways of a so-called key product as defined by the withdrawal agreement between the plaintiffs and the non-party 180s, regardless of where in the country those sales are made. So counsel's representation that all the breaches occur here in the Northern District of Illinois is simply not accurate. And what we are dealing here with is an allegation of specific jurisdiction based on one sale by one of the defendants, swimways, from an interactive website to counsel for the plaintiffs, shipped to counsel's supplied address in Evanston, Illinois. And this purchase was made by counsel for the plaintiffs after the suit was filed. Five months after the original complaint was filed and several weeks after the amended complaint was filed. As to the spinmaster defendants, there's no allegation whatsoever, let alone evidence, of any contact between those defendants and the forum. All we have is a bald assertion by the appellants in their brief that because swimways is a wholly owned subsidiary of another spinmaster entity, and because the district court allegedly had jurisdiction over swimways, the district court also must have jurisdiction over the spinmaster defendants. Now even assuming, arguendo, the existence of specific jurisdiction over swimways, that argument is simply wrong as a matter of law. As this court held in KM Enterprises in Central States, which we cite at page 29 of our brief, absent some basis for piercing the corporate veil, which has not been alleged here, corporate affiliation alone cannot serve as a basis for personal jurisdiction. Appellants offered no contrary authority in their brief to support their corporate affiliation argument as to the Canadian defendants, and they declined the opportunity to respond to any of the arguments in the appellee's brief, including that one, by electing not to file a reply brief. And so far here today, counsel has offered no response, no explanation, really, as to how two Canadian entities with zero contacts in the Northern District can be hailed into court there. So the district court correctly concluded that the spinmaster defendants are not subject to the jurisdiction of the court. Are some of the defendants involved in unrelated litigation here in Illinois? There was an assertion by the plaintiffs below, which they're not relying on here on appeal, that some spinmaster entities had been engaged in litigation in this form previously. They're not making the argument on appeal. And of course, they're arguing only specific jurisdiction, Your Honor, not general jurisdiction. And there's nothing in the record about how any prior litigation in the Northern District of Illinois involving any of the spinmaster entities could give rise to the existence of specific jurisdiction for the plaintiff's claims in this case. Now, the district court also correctly dismissed the complaint as to Swimways. As I said, the only evidence they're pointing to is this one purchase by counsel for the plaintiffs from the website of Swimways of a product. And we don't even know if the plaintiffs are claiming that's a supposed royalty-generating key product. The first amended complaint itself offers no specific allegations about contacts between Swimways and this forum, contrary to the appellant's assertion in their brief at page 16. We just have this one purchase by plaintiff's counsel. So effectively, the plaintiffs are arguing, as I believe counsel for the appellants conceded in his opening remarks, that they should be able to sue Swimways in any state, including Illinois, where Swimways has shipped at least one product. But that position is directly contrary to law, as this court cautioned in Advanced Tactical in 2014. Quote, the creation of such de facto universal jurisdiction runs counter to the approach the Supreme Court has followed since international shoe, and that it reaffirmed as recently as February 2014 in Walden. That's at 751 F3rd and 801 and 802. This one loan post-complaint sale simply cannot establish the existence of personal jurisdiction. So let's just spin it out a little bit. Suppose you had a more elaborate hearing and plaintiffs were putting on, got jurisdictional discovery. They put on evidence of how many sales of these products are made in Illinois. And they say, look, Hemigroup ought to be treated as sufficient here. We're not saying that the sale by itself is the wrong in Hemigroup. It's the sale unaccompanied by payment of the required taxes and filing of the reports, right? That sounds a lot like failure to pay royalties. Here, the failure to pay royalties, the decision not to pay royalties, would have been made at Swimwey's principal place of business in Virginia Beach. Sales somewhere in the United States are a predicate to the plaintiff's claims here, but sales into Illinois are not. And that's in stark contrast to the claims in Hemi, where as soon as Hemi shipped cigarettes into Illinois, it triggered the state's claims under the two state statutes at issue. And as for the Federal Jenkins Act claim brought in that case against Hemi, that act required the defendant, Hemi, to submit to the Illinois Tobacco Tax Administrator a monthly report showing the sales into Illinois. So there, again, all of the claims at issue in Hemi directly arose from the defendant's suit-related contact that was directed at Illinois. Here, the plaintiffs are saying, we're entitled to a royalty every time Swimwey's sells certain products in the United States. They're not claiming they're only entitled to royalties when sales are made into Illinois. So here, the plaintiff's claims do not directly arise from any alleged contact between the defendant, Swimwey's, and the farm. I see that I'm out of time, so unless there are other questions, I will take a seat. Thank you, counsel. Thank you. Okay, I'll give you a minute. I don't believe... Thank you. Thanks to both counsel. The case is taken under advisement, and we move to the...